IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | LEAD CASE NO. 13-03252 (ESL) |
| HECTOR M. CRUZ RODRIGUEZ<br>BRENDA S. RODRIGUEZ VAZQUEZ | CHAPTER 13 |
| Debtors | |
| HECTOR M. CRUZ RODRIGUEZ<br>BRENDA S. RODRIGUEZ VAZQUEZ | ADV. PROC. NO. 13-00134 (ESL) |
| Plaintiffs | |
| vs. | |
| FIRSTBANK PUERTO RICO | |
| Defendant | |
| JOSE R. CARRION (Chapter 13 Trustee) | |

OPINION AND ORDER

This case is before the court upon the *Motion for Summary Judgment* (Docket No. 17) filed by the Plaintiffs seeking a determination of value (at $150,000) of a real property registered as Lot No. 8,479, page no. 147, volume no. 266 (the "Real Property") of the Property Registry of Puerto Rico, Section I of Caguas (the "Property Registry") and that First Bank Puerto Rico ("First Bank"), a junior lien holder on the property, be found to be a wholly unsecured creditor under Section 506(a) of the Bankruptcy Code. The Plaintiffs also request an order directing the Registrar of the Property Registry (the "Property Registrar") to eliminate First Bank's junior mortgage from the Property Registry under Section 1322(b)(2). Also before the court is the *Partial Opposition to Motion for Summary Judgment* (Docket No. 22) contending that an order for the Property Registrar to eliminate its junior mortgage cannot be entered until the Plaintiffs have completed all payments under their Chapter 13 plan. For the reasons stated herein, the *Motion for Summary Judgment* is granted in part and denied in part.

Procedural Background

The Plaintiffs filed their Chapter 13 bankruptcy petition on April 26, 2013.  See Lead Case Docket No. 1.  In *Schedule A*, they listed the Real Property as their residential property with a value of $150,000.00 and a secured claim of $230,319.19.  See Lead Case Docket No. 3, p. 21.

On June 21, 2013, the Plaintiffs filed the *Complaint* that initiated the instant adversary proceeding (Docket No. 1). On September 19, 2013, First Bank filed the *Answer to Complaint* (Docket No. 13).

On October 18, 2013, the court held an initial pre-trial conference in which it granted the parties 90 days to conclude discovery and 120 days to file dispositive motions and/or file a settlement agreement (Docket No. 15).

On May 9, 2014, the Plaintiffs filed the *Motion for Summary Judgment* (Docket No. 17) and the *Statement of Uncontested Facts in Support of Plaintiffs' Motion for Summary Judgment* (Docket No. 18).  The Plaintiffs pray for an order (a) determining that the value of the Real Property is $150,000.00; (b) declaring that First Bank's junior lien on the Real Property is wholly unsecured; (c) declaring that First Bank's claim for its junior lien be classified as unsecured; (d) to enter an order directing the Property Registrar to erase from the Property Registry First Bank's junior mortgage; and (e) to provide for reasonable attorney fees and costs incurred in the litigation of this proceeding.

On June 13, 2013, First Bank filed a *Partial Opposition to Motion for Summary Judgment* "agree[ing[ with: (i) Plaintiffs' proposed value of the [Real P]roperty, (ii) the correctness of the amounts of any senior lien encumbering the [Real P]roperty, and (iii) with the consequent application of the law to [its] claim"  (Docket No. 22, p. 2, ¶ 6)  Notwithstanding, First Bank's "partial objection refers to Plaintiffs' request for an immediate order instructing the Registrar of the Property Registry to erase from their records [Firtst Bank]'s mortgage note for the junior lien recorded on the Plaintiff's property".  Id.  Fist Bank also "agree[d] and incorporate[d] Plaintiffs' Statement of Uncontested Facts". Id., p. 2, ¶ 9.

No further briefs or replies were filed.

<u>Uncontested Material Facts</u>

As per First Bank's admissions and the totality of the record, the following facts are uncontested[1]:

1.      On May 14, 2004, the Plaintiffs and First Bank executed *Deed of Mortgage No. 139* before Notary Public David Gómez Rosario (the "*First Mortgage*").  <u>See</u> Claims Register No. 6-1, Part 4, pp. 1-24.  The *First Mortgage* was recorded on the Real Property at the Property Registry at page 38 of volume 562, 7th inscription.  <u>See</u> Claims Register No. 6-1, Part 2, p. 1.

2.      Also on May 14, 2004, the Plaintiffs and First Bank executed *Deed of Mortgage No. 140* before Notary Public David Gómez Rosario (the "*Second Mortgage*").  <u>See</u> Claims Register No. 18-1, pp. 7-32.  The *Second Mortgage* was recorded on the Real Property at the Property Registry at page 38 of volume 562, 8th inscription.  <u>See</u> Claims Register No. 18-1, p. 5.

3.      The Plaintiffs are the owners of the Real Property.

4.      As of the date the instant case was filed, the Real Property had been valued at $150,000.00.

5.      First Bank holds a senior lien over the Real Property in the amount of $182,340.53.

6.      First Bank also holds a junior lien over the Real Property in the amount of $50,500.00.

7.      The Real Property is encumbered by liens senior to First Bank's junior mortgage, to wit, the *Second Mortgatge*.

8.      There is no equity in the Real Property after payment in full of the liens senior to First Bank's junior and thus, the value of First Bank's interest in the Real Property, as it pertains to the junior lien, is zero.

---

[1] <u>See</u> Docket Nos. 18 (Statement of Material Uncontested Facts) and 22, p. 2, ¶ 9 (where First Bank "agree[s] and incorporate[s] Plaintiffs' Statement of Uncontested Facts).

9.      First Bank's interest on the Real Property as to the junior lien is completely unsecured.

## Jurisdiction

The court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).  Fed. Rs. Bankr. P. 7001(2) and 7001(9) provide that proceedings to determine the validity, priority or extent of a lien or other interest in property and to obtain a declaratory judgment relating to such validity or priority are adversary proceedings[2].

## Applicable Law and Analysis

Section 506 of the Bankruptcy Code governs the determination of whether a claim is secured, partially secured or unsecured.  Section 506(a)(1) explains the bifurcation of an allowed claim into secured and unsecured portions, the secured part being "secured" by the collateral's value and the unsecured part being the remaining amount of the claim in excess of the collateral's value:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest … is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, … and is an unsecured claim to the extent that the value of such creditor's interest … is less than the amount of such allowed claim.  Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a)(1).

Therefore, "under 11 U.S.C. § 506(a), an under-secured creditor's claim is split (bifurcated) into two claims: (a) a secured claim equal to the value of the collateral; and (b) an unsecured claim

---

[2] The court is cognizant that many courts have held that "the appropriate procedure for lien avoidance under Section 506 is by motion because lien avoidance is the inevitable byproduct of valuing a claim, which is accomplishedby motion pursuant to Bankruptcy Rule 3012."  In re Robert, 313 B.R. 545, 549 (Bankr. N.D.N.Y. 2004), quoting In re Sadala, 294 B.R. 180, 183 (Bankr. M.D. Fla. 2003).  Also see In re Miller, 462 B.R. 421, 433 (Bankr. E.D.N.Y. 2011) ("the proper mechanic to value the mortgage lien under § 506(a) in chapter 13 cases is to bring a motion pursuant to Rules 3012, 9013, and 9014").

equal to the amount by which the allowed claim exceeds the value of the collateral." In re Moore, 275 B.R. 390, 392 (Bankr. D. Colo. 2002).

Section 506(d) of the Bankruptcy Code provides that:

To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless --

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d).

"[I]f a creditor does not have an *in rem* interest in a debtor's property or if that interest was voided in bankruptcy, the creditor simply has a debt with no right to collect from the debtor or his property." In re Dendy, 396 B.R. 171, 178 (Bankr. D.S.C. 2008).

For Chapter 13 cases, like the instant one, the foregoing must be read in conjunction with Section 1322 of the Bankruptcy Code. Section 1322(b)(2) allows a Chapter 13 debtor to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence". 11 U.S.C. § 1322(b)(2). A "debtor's principal residence":

(A) means a residential structure, including incidental property, without regard to whether that structure is attached to real property; and

(B) includes an individual condominium or cooperative unit, a mobile or manufactured home, or trailer.

11 U.S.C. § 101(13A).

A majority of courts have held that a junior mortgagee whose lien is supported by no equity can be treated as an unsecured creditor and its lien "stripped off" by the debtor's Chapter 13 plan. For instance, the Second, Third, Fifth, Sixth, Ninth, and Eleventh Circuits have ruled that such strip off is permissible. See *e.g.* In re Pond, 252 F.3d 122 (2nd Cir. 2001); In re McDonald, 205

F.3d 606 (3rd Cir. 2000); First Mariner Bank v. Johnson, 2011 U.S. App. Lexis 402 (4th Cir. Md. 2011); In re Bartee, 212 F.3d 277 (5th Cir. 2000); In re Lone, 280 F.3d 663 (6th Cir. 2002); In re Zimmer, 313 F.3d 1220 (9th Cir. 2003); In re Tonner, 217 F.3d 1357 (11th Cir. 2000).  The Bankruptcy Appellate Panel for the First Circuit has ruled that Section 1322(b)(2) does not bar a Chapter 13 debtor from stripping off a wholly unsecured lien on his principal residence.  See Domestic Bank v. Mann (In re Mann), 249 B.R. 831 (B.A.P. 1st Cir. 2000).  Pursuant to First Bank's admissions, there is no dispute that the current value of the Real Property is $150,000.00 and therefore there is no equity on the Real Property to secure First Bank's *Second Mortgage*. In other words, First Bank's junior lien is wholly unsecured under Section 506(d) of the Bankruptcy Code.  The exception afforded in Section 1322(b)(2) for primary residences is not applicable to the instant case as it pertains to the *Second Mortgage*.

The only remaining controversy is whether the Plaintiffs are entitled to an order voiding First Bank's *Second Mortgage* from the Property Registry at this juncture, that is, prior to the discharge order and the completion of payments under the Chapter 13 plan.  First Bank contends that this controversy is "an issue of first impression in our circuit" and that "[s]everal courts, presented with the same facts have concluded that unsecured junior mortgage liens are permanently avoided only once a chapter 13 plan is confirmed and all plan payments have been made" (Docket No. 22, p. 4, ¶ 16).  The Plaintiffs did not reply to First Bank's contention. Thus, First Bank objects "to Plaintiffs' request for an immediate order instructing the Registrar of the Property Registry to erase from their records [Firtst Bank]'s [*Second Mortgage*] … on the Plaintiff's [Real Property]" (Docket No. 22, p. 4, ¶ 15).  To support its contention, First Bank argues that "unsecured junior mortgage liens are permanently avoided only once a chapter 13 plan is confirmed and all plan payments have been made" (Docket No. 22, p. 4, ¶ 16) and cites the following cases: In re Miller, 462 B.R. 421, 433 (Bankr. E.D.N.Y. 2011); Frazier v. Real Time Resolutions, Inc. (In re Frazier), 469 B.R. 889 (E.D. Ca. 2012); In re Okosisi, 451 B.R.90, 103 (Bankr. D. Nev. 2011); In re Tran, 431 B.R. 230, 236-37 (Bankr. N.D. Ca. 2010); Fisette v.

Keller (In re Fisette), 455 B.R. 177, 185 (B.A.P. 8th Cir. 2011), appeal dismissed, 695 F.3d 803 (8th Cir. 2012); In re Jennings, 454 B.R. 252, 255 (Bankr. N.D. Ga. 2011).

In all the cases cited by First Bank, the debtors had previously obtained a Chapter 7 discharge and subsequently filed a Chapter 13 case in such close proximity to their Chapter 7 case that they were ineligible for a Chapter 13 discharge under Section 1328(f)(1) of the Bankruptcy Code, which proves that

> Notwithstanding subsections (a) and (b), the court shall not grant a discharge of all debts provided for in the plan or disallowed under section 502, if the debtor has received a discharge—
>
> (1) in a case filed under chapter 7, 11, or 12 of this title during the 4-year period preceding the date of the order for relief under this chapter…

11 U.S.C. § 1328(f)(1).

These types of cases are commonly referred to as "Chapters 20". See In re Fisette, 455 B.R. at 184. Because Chapter 20 debtors are not entitled to discharge, courts have recognized that "the strip off of a wholly unsecured lien on a debtor's principal residence is effective upon completion of the debtor's obligations under his plan, and it is not contingent on his receipt of a Chapter 13 discharge". Id. at 185. Also see In re Dolinak, 497 B.R. 15, 22-23 (Bankr. D.N.H. 2013).

The instant case is not a Chapter 20 but an ordinary Chapter 13, and therefore the doctrine developed for Chapters 20 is not directly applicable because the Plaintiffs are entitled to discharge under 11 U.S.C. § 1328. Hence, if the Plaintiffs complete their payments under the confirmed plan, they are eligible for the discharge afforded in Section 1328 of the Bankruptcy Code, which requires that "as soon as practicable after completion by the debtor of all payments under the plan, and in the case of a debtor who is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of the certification (including amounts due before the petition was filed, but only to the extent provided for by the

plan) have been paid … the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed…".  11 U.S.C. § 1328(a).

Neither the Bankruptcy Code or the Rules of Bankruptcy Procedure address the procedure to require mortgagees to release their liens in Property Registries upon completion of Chapter 13 plan with a strip off provision/order.  In <u>In re Moore</u>, *supra*, the creditor had an under-secured claim against the debtors' estate.  Under the debtors' Chapter 13 plan, once the debtors paid the secured portion of the debt, the creditor would be required to release the lien against the debtors' automobile and forward the title to the debtors.  The creditor claimed that it should not be required to release the lien until the debtors had made all payments under their Chapter 13 plan and had obtained a discharge of their debts.  The court found that "in order to obtain the benefit of the modification of a secured creditor's rights and release of a lien without full payment of the debt, the Debtors must complete all of the payments under their Chapter 13 plan and be granted a discharge". 275 B.R. at 293.  This court applies the same principle regarding the avoidance of the *Second Mortgage* at the Property Registry.  The stripping of liens pursuant to a confirmed plan is not final unless and until the debtor completes the payments of the plan and obtains a discharge pursuant to Section 1328 of the Bankruptcy Code.  The foregoing also takes into consideration Section 1325(a)(5)(B)(i)(I)(bb), which requires Chapter 13 plans to provide that the claim holder "retain[s] the lien securing such claim until … discharge under section 1328….", Section 1325(a)(5)(B)(i)(II), which provides that "if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law", and Section 349(b)(1)(C), which provides that:

> Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title--
>
> (1) reinstates--
>
> (C) any lien voided under section 506(d) of this title.
>
> 11 U.S.C. § 349(b)(1)(C).

Conclusion

In view of the foregoing, the *Motion for Summary Judgment* filed by the Plaintiffs is partially granted to determine that First Bank's *Second Mortgage* is wholly unsecured under Section 506(d) of the Bankruptcy Code. The Plaintiff's request for an order to the Property Registrar to eliminate First Bank's *Second Mortgage* is hereby denied without prejudice at this juncture.

SO ORDERED.

Judgment will be entered accordingly.

In San Juan, Puerto Rico, this 24th day of September, 2014.

Enrique S. Lamoutte
United States Bankruptcy Judge